**IN THE COURT OF APPEALS OF IOWA**

No. 19-0376
Filed May 15, 2019

**IN THE INTEREST OF J.J.,**
**Minor Child,**

**D.J., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Blake D. Lubinus of Lubinus Law Firm, PLLC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

William E. Sales III of Sales Law Firm, P.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to his minor child. He challenges the sufficiency of the evidence supporting the grounds for termination and contends termination is not in the child's best interests. The father additionally challenges the denial of his motion to reconsider, enlarge, or amend the juvenile court's findings.

## I.      Background Facts and Proceedings

D.J., the father, and M.M., the mother, are the parents of J.J., born in 2016. The mother has children from other relationships. J.J. came to the attention of the Iowa Department of Human Services (DHS) in March 2017 after the father caused a large bruise to the eye of one of the mother's other children. While DHS investigated the injury, it received additional reports about the parents' drug use and the father's physical abuse of J.J. The mother reported the father grabbed and threw a car seat that J.J. was then buckled into out of a vehicle, causing the child to fall out of the car seat and land on the pavement. This led to J.J. hitting her head on the pavement. When the mother attempted to care for the child, the father physically assaulted the mother, which resulted in the child suffering further bruising and abrasions. The parents did not take the child to the hospital immediately, and the mother lied to the police after they arrived to do a welfare check based on a witness report.

Once J.J. received medical care, doctors discovered a skull fracture and an older, healing leg fracture. DHS informed the mother that the father should not have contact with her or the children. However, after the child was discharged from the hospital, the mother returned to the father. The father attacked the mother

again with the child present. The child was removed from the parents' care and initially placed with the maternal grandmother but was subsequently moved into foster care. DHS returned founded child-abuse assessments against the father for denial of critical care and physical abuse for the injuries sustained by both J.J. and the mother's other child.

The father was arrested for domestic assault and child endangerment, and a protective order was established preventing the father's contact with either the mother or the child. He ultimately pled guilty to domestic abuse, third offense. The father remained incarcerated during the entirety of the pendency of this case and did not have visitation with the child. He has a history of domestic violence toward the mother and previous paramours, including two domestic-abuse-assault convictions, and he is the subject of several protective orders. The father also has a history of ignoring and violating protective orders. During the pendency of this case, the father tried to contact the mother while in jail, despite the protective order. His parental rights to another child were terminated in September 2016 due to his unresolved substance-abuse and physical-violence issues.

The juvenile court adjudicated the child in need of assistance (CINA) in May 2017. In January 2018, the father requested modification of the protective order between himself and the child so visitation could occur. In May, the district court granted the modification, stating the father and child "may have contact by DHS recommendation and through their supervision." In its September report to the court, DHS stated that, despite the modification of the protective order, it had not yet offered visitation between the child and father. It stated its reasoning for the denial was due in part to the distance between the child's foster-care placement

and the prison where the father was located. DHS's "best practice for young children is visits that are happening for shorter amounts of time and more frequently." Since the prison was two hours away from the child's foster home, it would require the child to be in a car for four hours to have a short visit with the father. Given that the father had not seen the child for over a year and the child's young age, DHS felt this arrangement would not be in the child's best interests. Further, DHS remained concerned about the father's reported denial of harming the child when he threw the car seat. The juvenile court ultimately terminated the father's parental rights to J.J. in December 2018. The father appeals.[1]

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

> We use a three-step analysis to review termination of parental rights. First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

---

[1] The court also terminated the mother's parental rights to this child. She is not a part of this appeal.

*Id.* at 472–73 (quoting *In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016)).

**III.     Analysis**

      A.     Statutory Grounds for Termination

The juvenile court terminated the father's parental rights to J.J. pursuant to Iowa Code section 232.116(1)(b), (d), (e), (g), and (h) (2018).  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Termination under paragraph (g) requires the court to find that all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).  The father seemingly does not contest the first two elements.  He focuses his argument on the establishment of the third and fourth elements.  He contends DHS failed to offer any services and he had to access them on his own.  He also contends the State failed to provide evidence that he was unlikely to be rehabilitated, stating that he took responsibility for his actions by pleading guilty and worked to better himself in prison.

Though the father has engaged in services addressing his violent tendencies, during the termination hearing he admitted he had little to no insight as to why he has been violent or why he was aggressive toward some, but not all, of his partners. Further, he had no insight into and minimized his issues with authority and history of violating protective orders: "I guess you could say I was still in contact with his mother too." On our review of the record, we find there is clear and convincing evidence the father continued to lack the ability or willingness to respond to services and an additional period would not correct the situation. *See id.* § 232.116(1)(g)(3)–(4).

B.      Best Interests

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

The child has been removed from the father's care since March 2017, nearly all of the child's life, due to the father's violence against the child and the mother. The father has long-standing issues with violence, and though he engaged in services aimed at anger-management techniques to avoid violence in the future, he has little to no insight as to why he became violent in the past. "It is well-settled

law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Given the child's young age and need for permanency, on our de novo review, we find termination is in the child's best interests.

To the extent the father is requesting additional time to allow for reunification, section 232.104(2)(b) allows the continuance of the child's placement for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Upon our de novo review, we decline to grant an extension and delay the child's permanency any longer. The father does not argue a statutory exception to termination under Iowa Code section 232.116(3) applies. Therefore, we do not need to discuss this step. *P.L.*, 778 N.W.2d at 40.

C. Motion to Reconsider, Enlarge, or Amend

Following termination, the father filed a motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). He requested clarification relative to the court's conclusions of law concerning several statutory grounds for termination cited by the court. The juvenile court denied the motion, stating that its conclusions were "supported by the record and findings of fact" and "the father's request for a finding that reasonable efforts were not made, is not ripe." The father requests we reverse the juvenile court's denial of the motion. We have found the evidence sufficient to terminate the father's parental rights under a ground not stated in the father's motion, therefore we deny the father's request.

We affirm the termination of the father's parental rights.

**AFFIRMED.**